1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

NAVIGANT CONSULTING, INC., a
corporation,

                  Plaintiff,

      v.

JAMES PETTERSSON, an individual, and
MILLIMAN, INC., a corporation,

              Defendants.

Case No. 18-1154

**VERIFIED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF**

Plaintiff Navigant Consulting, Inc. ("Navigant"), by and through its undersigned attorneys, alleges as follows for its Complaint against Defendants James Pettersson ("Pettersson") and Milliman, Inc. ("Milliman") (jointly, "Defendants"):

## **NATURE OF THE ACTION**

1.    This action arises out of first threats and then actions by Pettersson, a former Managing Director of Navigant, to steal the employees and clients from Navigant's practice group that he formerly managed. Until May 31, 2018, Pettersson managed the Government Rate Setting "solution" within Navigant's Healthcare segment. In early May of this year, Pettersson gave notice he was resigning and threatened Navigant that unless they sold him the Government Rate Setting business, he would take it. Navigant rebuffed Pettersson's threats and reminded him of his post-employment contractual obligations, including his promise to not solicit employees or customers of Navigant for a period of one year after his termination. Unfortunately, Pettersson is ignoring and violating his obligations to Navigant and is actively working to carry out his threats.

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

2.      Specifically, since leaving Navigant, Pettersson joined Milliman to create and head up its new government rate setting consulting business. Shortly after Pettersson provided notice, two key employees who previously reported to Pettersson resigned. Navigant since learned both employees are working at Milliman with Pettersson. The circumstances surrounding the employees' departures, discussed in detail below, strongly evidences that Pettersson solicited each of them to leave Navigant. Further, Navigant learned that Milliman is aggressively soliciting key employees of Navigant's Government Rate Setting solution to move to Milliman -- employees who previously worked under Pettersson. Milliman's targeted solicitations evidence that Pettersson is providing Milliman information and direction to recruit the Navigant employees he wants hired to unfairly compete against his former employer.

3.      Pettersson's wrongful conduct goes well beyond the raiding of Navigant's workforce. Navigant since learned that prior to leaving Navigant -- but after giving notice -- Pettersson used his Navigant email account to send confidential Navigant information, trade secrets and intellectual property relating to clients, an employee, and a high-level candidate to his personal email account in violation of his contractual obligations to Navigant. The only reason for Pettersson to have done so is to have access to this information after he left Navigant. And, the only plausible reason for his post-employment access is to use that information to unfairly compete against Navigant.

4.      On July 27, 2018, Navigant wrote Pettersson and Milliman to demand that Navigant inspect Pettersson's electronic devices and accounts to investigate Pettersson's misuse of Navigant confidential information and remove such information from Pettersson's and/or Milliman's control. Navigant further demanded that Pettersson and Milliman immediately cease and desist from raiding and interfering with Navigant's workforce. Pettersson and Milliman failed to produce (or agree to produce) Pettersson's devices and refused to cease raiding and interfering with Navigant's workforce.

VERIFIED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF - 2
CASE NO.

5.      Since Navigant wrote Pettersson and Milliman, a forensic examination of Pettersson's Navigant-issued computer revealed strikingly duplicitous conduct. On May 31, 2018, Pettersson's last day of Navigant employment, a large number of Navigant documents and files were deleted. From the file names, the documents appear to include information on Navigant employees and clients. On that same day, at least two USB storage devices were attached to his Navigant-issued computer that have not been returned. In other words, without any plausible legitimate basis, Pettersson attached two storage devices to his computer and then wiped out a number of documents appearing to contain Navigant confidential information, trade secrets and intellectual property. Thus, the preliminary forensic results suggest that Pettersson copied Navigant information he was prohibited from taking and then deleted that same information to prevent anyone at Navigant from having the benefit of those documents and information.

6.      Accordingly, Navigant now brings this action to: (a) recover its confidential information stolen by Pettersson, (b) enjoin Defendants from using Navigant confidential information, (c) enjoin Defendants from soliciting Navigant employees to terminate their employment, (d) enjoin Defendants from soliciting Navigant clients to move their business to Milliman, (e) awarding Navigant compensatory and punitive damages, and (f) awarding Navigant its reasonable attorneys' fees as provided for under its agreement with Pettersson and applicable law.

## THE PARTIES AND RELEVANT PERSONS

7.      Navigant is a Delaware corporation with its principal place of business located in Chicago, Illinois.

8.      Upon information and belief, Pettersson is a citizen of the State of Washington and resides in Seattle, Washington.

9.      Upon information and belief, Milliman is a Washington corporation with its principal place of business located in Seattle, Washington.

VERIFIED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF - 3
CASE NO.

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1

## JURISDICTION AND VENUE

2      10.     The Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because this action

3  and controversy is between citizens of different states and exceeds the sum or value of

4  $75,000.00, exclusive of interest and costs. This Court also has federal jurisdiction over

5  Navigant's claims brought under the Defend Trade Secrets Act, pursuant to 28 U.S.C. § 1331,

6  and this Court has supplemental jurisdiction over Navigant's remaining claims pursuant to 28

7  U.S.C. § 1367.

8      11.     This Court has personal jurisdiction over Defendants because they are citizens and

9  residents of Washington. Venue is proper in the United States District Court for the Western

10 District of Washington, pursuant to 28 U.S.C. § 1391(b), because Defendants reside in this

11 District, the Navigant property that Navigant seeks to be returned is located in this District, the

12 wrongful acts complained of were committed in this District, and a substantial part of the events

13 giving rise to Navigant's claims occurred in this District.

14

## BACKGROUND

15

### Navigant's Business

16     12.     Navigant is a specialized, global professional services firm that, through its team

17 of professionals, helps clients build, manage and protect their business interests. Navigant

18 primarily serves clients in the healthcare, energy and financial services industries and offers a

19 range of advisory, consulting, outsourcing, and technology/analytics services.

20     13.     Pertinent to this case, Navigant's Healthcare segment provides services to

21 healthcare providers, physician groups, insurers, governmental entities, pharmacies and others.

22     14.     One of Navigant's business "solutions" within the Healthcare segment is the

23 Government Rate Setting solution, which provides advice and services to state government

24 clients in the development and implementation of rate setting methodologies and the calculation

25 of specific price points that then become the standard for reimbursing for medical services under

26 government payment systems.

VERIFIED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF - 4
CASE NO.

15.     The consulting industry is highly competitive, including within the healthcare industry.

16.     Within each "solution," Navigant's services are delivered through teams of professionals led by Managing Directors. Directors and Associate Directors support the managing directors to deliver professional services to each client in focused teams. Directors are in turn supported by consultants.

17.     Navigant's Government Rate Setting group services each client, often with a dedicated team of two to four employees comprised of Director through Consultant level employees. The client teams work intimately with members of each client to deliver Navigant's services and each engagement may last for a number of years. Not surprisingly then, Navigant's professionals develop close relationships with Navigant's clients. These close relationships are a tremendous asset of the company because they help Navigant maintain its client relationships, develop goodwill, and provide Navigant a competitive advantage in the professional services marketplace.

18.     Clients typically engage Navigant through a request for proposal ("RFP") process through which Navigant and its competitors prepare a formal submission to provide services. A typical RFP includes the proposed client team, the skills and experience of each team member and the Government Rate Setting group overall, and the fees to be charged to deliver the requested services.

19.     A successful RFP results in the award of a contract to deliver services over a period of time. Once awarded a contract, Navigant has been very successful in obtaining renewals of its client contracts. As a result, many of Navigant's client relationships have existed for several years and Navigant reasonably expects its client relationships to continue into the future.

20.     Although Navigant has had substantial success in building its client relationships, it faces many risks to its continued ability to do so. Among other things, Navigant must maintain

VERIFIED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF - 5
CASE NO.

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

a workforce capable of delivering its services. In addition, client contracts are generally terminable at will. Accordingly, if Navigant loses its workforce, there is a significant risk it will lose its clients' business as well.

## Protection of Navigant Confidential Information

21.    Navigant develops and possesses a variety of information, which it keeps confidential, that provides Navigant a competitive advantage in the consulting marketplace. This confidential information includes, but is not limited to, business plans, strategic models, sales forecasts, current and prospective client information, and information relating to employees (including their responsibilities, competence and abilities, and compensation).

22.    Navigant protects its information (described in the paragraph above) by, among other things: limiting the disclosure and use of certain confidential information to only the employees who need this information to perform their job duties and responsibilities; educating Navigant employees about the requirement and necessity of keeping this information confidential; limiting access to this information by restricting access to computer networks and requiring the use of passwords to access the information; and requiring its employees to execute written agreements that protect against the misuse and improper disclosure of Navigant confidential information, trade secrets and intellectual property.

23.    Navigant's confidential and proprietary information is not available to the general public and is closely guarded by Navigant. Navigant keeps such information strictly confidential in order to maintain an advantage in the highly competitive consulting business.

## Pettersson's Navigant Employment

24.    On January 31, 2004, Pettersson became employed at Navigant as a Managing Director after Navigant acquired a consulting business part-owned by Pettersson. After joining Navigant, Pettersson was responsible for managing and running Navigant's Government Rate Setting solution under the Healthcare business segment.

VERIFIED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF - 6
CASE NO.

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

25.     Pettersson directly oversaw a team of 15-20 employees who worked on client accounts that generated approximately $8-$10 million in revenues each year.   Two of those employees on the Government Rate Setting solution team included Ben Mori ("Mori") and Luke Roth ("Roth").

26.     In connection with his Navigant employment, Pettersson helped develop, and had access to, a wide variety of Navigant confidential information, trade secrets and intellectual property. This confidential and proprietary information includes: Navigant's business plans and strategies for the Government Rate Setting solution; the identities of Navigant clients, the terms of the client contracts, and the specific decision makers at each client; the identities of Navigant employees, their skill sets and strengths, their compensation terms, and career objectives; and other proprietary information that provides Navigant an advantage in the healthcare consulting marketplace.

27.     As a result of Pettersson's employment, his access to Navigant confidential information and customer relationships, Pettersson entered into the Agreement Regarding Confidential Information, Intellectual Property and Non-Solicitation ("Agreement") with Navigant on or about January 31, 2004. A true and correct copy of the Agreement is attached hereto as Exhibit 1.

28.     Among other things, by executing the Agreement, Pettersson acknowledged and agreed that he would have access to Navigant confidential information:

2.     *Definition of Confidential Information.*  I realize that my position with the Company creates a relationship of high trust and confidence with respect to Confidential Information owned by the Company, its clients or suppliers that may be learned or developed by me while employed by the Company. I further acknowledge that my access to such Confidential Information is contingent upon my execution of this Agreement. For purposes of this Agreement, "Confidential Information" means all information that the Company desires to protect and keep confidential or that the Company is obligated to third parties to keep confidential, including but not limited to "Trade Secrets" to the full extent of the definition of that term under Illinois law. It does not include "general skills, knowledge and experience" as those terms are defined under Illinois law, nor does it include information which (a) I can demonstrate is obtained by or becomes available to me from a source other than the Company or Tucker Alan, Inc. or their respective

VERIFIED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF - 7
CASE NO.

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

affiliates that, to my knowledge, is not bound to keep such information confidential; or (b) is or becomes generally known to the public through no action on my part.

3.     *Examples of Confidential Information.*  Confidential Information includes, but is not limited to, the following categories of information that otherwise meet the definition of Confidential Information set forth in paragraph 2 hereof: computer programs; unpatented inventions, discoveries and improvements; marketing, manufacturing, organizational, operating and business plans; strategic models; research and development; Company policies and manuals; sales forecasts; personnel information (including the identity of the Company employees, their responsibilities, competence and abilities, and compensation); medical information about employees; pricing and nonpublic financial information; current and prospective client lists and client information on clients or their employees; information concerning planned or pending acquisitions or divestitures; and information concerning purchases of major equipment or property.

(Agreement, §§ 2, 3).

29.     Pettersson further agreed to keep all such Confidential Information secret and to

not use any such information on behalf of a competitor:

5.     *Confidentiality Obligations.*  During and after my employment with the Company, I will not (a) disclose, directly or indirectly, any Confidential Information to anyone outside of the Company or to any employees of the Company not authorized to receive such information or (b) use any Confidential Information other than as may be necessary to perform my duties at the Company. By way of example and without limitation, *in no event will I disclose any Confidential Information to, or use any Confidential Information for the benefit of, any current or future competitor, supplier or client of the Company, on behalf of myself, any subsequent employer, or any other person or entity* (it being understood that the provisions of this sentence shall not preclude me from such disclosures or uses during my employment for the purposes of performing services for such clients on behalf of the Company). Notwithstanding the foregoing, I will not be prohibited under this paragraph 5 from disclosing Confidential Information pursuant to a validly issued subpoena or order of a court or administrative agency of competent jurisdiction, or as otherwise is required by applicable law, rule or regulation, provided, further, that I will promptly notify the Company if I receive a subpoena, court order or administrative order requiring such disclosure (or if disclosure is otherwise required by applicable law, rule or regulation) to allow the Company to seek protection therefrom. (Emphasis supplied)

(Agreement, § 5, emphasis added).

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

30.     Pettersson agreed that when his employment ended, he would return all Navigant property in his possession, including any materials which relate to Confidential Information. (Agreement, § 9).

31.     In addition to protecting Navigant's Confidential Information, Pettersson also agreed to protect Navigant's employee workforce and client relationships both during and after his employment:

10.     *Restrictive Covenants.*     (a) <u>Non-Solicitation of Employees.</u>  While employed by the Company and for a period of twelve (12) months from the date of termination of my employment with the Company for any reason, I shall not directly or indirectly retain any of the Company's employees, nor shall I solicit, induce or encourage any of the Company's employee(s) to terminate their employment with the Company or to accept employment with any competitor, supplier or client of the Company, nor shall I cooperate with any others in doing or attempting to do so. As used herein, the term "solicit, induce or encourage" includes, but is not limited to, (i) initiating communications with a Company employee relating to possible employment, (ii) offering bonuses or additional compensation to encourage the Company's employees to terminate their employment with the Company and accept employment with a competitor, supplier or client of the Company, or (iii) referring the Company's employees to personnel or agents employed by competitors, suppliers or clients of the Company.

(b) <u>Non-Solicitation of Customers.</u>  While employed by the Company and for a period of twelve (12) months from the date of termination of my employment with the Company for any reason, I agree that I will not, either directly or indirectly, as a principal, agent, contractor, employee, employer, partner or shareholder (other than as an owner of 2% or less of the stock of a public corporation) or in any other capacity, solicit any client which was a client, or a prospective client, of the Company (provided I had responsibilities or duties with respect to, possessed Confidential Information regarding or was involved in the development of, such client or prospective client), within the twelve (12) months immediately preceding my termination, to become a client of a business that is competitive with the business engaged in by the Company as of the date of termination of my employment; provided, however, that nothing in this paragraph shall prohibit me from continuing my personal individual work on those cases (not as part of a team of employees supplied by another company or organization) on which I was working as of the date of the termination of my employment as long as (i) I otherwise continue to comply with my obligations regarding noncompetition and non-solicitation under the purchase documents and (ii) my continued work on such cases is pursuant to appropriate arrangements with the Company under which the Company is entitled to receive 15% of the amounts paid to me by the client for all such work (it being understood that the Company shall give me reasonable access to documents or other information necessary for such continuation of work and the Company and I shall otherwise reasonably cooperate in connection with such continuation of work). For purposes of this sub-paragraph 10(b), the term

"Company" means Navigant Consulting, Inc. or any division, subsidiary, affiliate, successor or assignee thereof but excluding any direct or indirect parent or shareholder thereof.

(Agreement, § 10).

32.    Pettersson agreed that his "violation of the foregoing confidentiality and non-solicitation obligations will cause [Navigant] irreparable harm" and agreed that Navigant "is entitled to protection from such violations, including protection by injunctive relief, in addition to other remedies available under the law." (Agreement, § 11).

33.    Finally, Pettersson agreed to pay Navigant its costs and reasonable attorney's fees incurred by Navigant if it prevails in enforcing any or all of the terms of the Agreement. (Agreement, § 23).

### **Defendants' Wrongful Conduct**

34.    On or about May 14, 2018, Pettersson provided written notice that he was voluntarily terminating his Navigant employment.

35.    The next day, Pettersson had a discussion with his direct manager, Rich Bajner, regarding Pettersson's separation. Pettersson asked that Navigant sell him the Government Rate Setting business and suggested that Navigant agree because other key employees would be leaving with Pettersson and the departures would significantly jeopardize the Government Rate Setting solution's existence.

36.    On May 16, 2018, Pettersson submitted a transition plan to Navigant. Once again, Pettersson asked Navigant to sell him the business because of his "sense" that many "key team members" may also resign and such resignations would cause the termination of Navigant's client relationships.

37.    On May 17, 2018, Navigant counsel met with Pettersson and it was agreed that effective May 17, Petterson would:

- Not contact any Navigant clients;

- Not perform any work for Navigant clients; and

VERIFIED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF - 10
CASE NO.

- Abide by the 12-month employee and client non-solicitation clauses in his Agreement.

38.     On May 22, 2018, Navigant held an in-person meeting in Chicago for all managing directors and directors within the Government Health business unit to discuss the transition of client management responsibilities from Pettersson and to discuss the trajectory of the practice going forward.

39.     At that meeting, Navigant decided to transfer the majority of Pettersson's responsibilities and client relationships to Mori, a direct report of Pettersson, who was in attendance at the meeting.

40.     On May 23, 2018,  Rich Bajner met with Mori to discuss Mori's new role, his transition plan, as well as compensation and incentive increases he would be receiving. Mori told Bajner he was excited, and that he was staying with Navigant and on-board with Navigant's plans for his career.

41.     The very next day, Mori expressed reservations to Bajner and wanted time to think about moving forward with Navigant. On May 29, following the Memorial Holiday weekend, Mori abruptly resigned.

42.     Mori's conduct from May 22 to May 24 was a complete U-turn in behavior. Upon information and belief, Mori was solicited by Pettersson to leave after Mori orally agreed to assume his enhanced role at Navigant.

43.     On May 29, 2018, Bajner spoke to another key Navigant consultant, Luke Roth, about the challenges and opportunities for him provided by the resignations of Pettersson and Mori. Roth was a highly-valued team member within the Government Rate Setting solution team and had worked closely with both Pettersson and Mori. During the May 29 meeting, Roth was provided a pathway to make Director along with certain financial incentives, including a retention bonus. Roth, like Mori, indicated his receptiveness to the plans and affirmed his commitment to Navigant. Like Mori, Roth's commitment to Navigant would later be undermined as well by Pettersson.

VERIFIED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF - 11
CASE NO.

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

44.     May 31, 2018 was Pettersson's last day of Navigant employment. Since that date, Navigant learned of additional improper conduct by Pettersson before he left. Specifically, upon information and belief, Pettersson told Navigant employees who reported to him that Navigant was "unstable," did not value the Government Rate Setting practice and that such practice would not last.

45.     Further, since May 31, 2018, Navigant learned that Pettersson joined Milliman to start a government rate setting practice which would compete with Navigant. Upon information and belief, prior to Pettersson joining Milliman, it did not offer competing services.

46.     Since Pettersson joined Milliman, key Navigant employees from Pettersson's former group have been solicited by Milliman to terminate their Navigant employment and join Milliman. The targeted solicitations by Milliman that only started with Pettersson's hire evidence that Pettersson is conspiring with Milliman to raid the same Navigant workforce he managed and to interfere with Navigant's ability to maintain its client relationships.

47.     Unfortunately, Pettersson's and Milliman's solicitations were successful. On July 17, 2018, Roth resigned to join Pettersson at Milliman. Roth told Navigant that he was hired by Milliman based on a single phone interview while Roth was vacationing in France. Upon information and belief, neither Milliman nor any other consulting firm would hire an employee at Roth's level and salary based on a single phone screen unless Pettersson was directing Roth's recruitment and hiring by Milliman.

48.     In addition to the employee solicitations, an examination of Pettersson's email usage prior to leaving Navigant revealed that Pettersson had sent Navigant Confidential Information to his personal email accounts. This information includes confidential client work product, communications with Navigant clients regarding on-going services, and confidential information relating to an existing Navigant employee and potential high-level candidate for employment. This information is the exact same type of information Pettersson acknowledged was Navigant Confidential Information and property when he executed the Agreement.

VERIFIED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF - 12
CASE NO.

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

49.     The only reason for Pettersson to have emailed himself the Navigant Confidential Information was to have access to that same information after his Navigant employment ended and to use such information to unfairly compete with Navigant.

50.     After uncovering the foregoing conduct, on July 17, 2018, Navigant wrote Milliman with a copy to Pettersson to demand that Pettersson immediately return and account for all Navigant information he misappropriated and to abide by his contractual obligations to Navigant. A true and correct copy of the July 17, 2018 letter is attached hereto as Exhibit 2. Navigant demanded that Milliman respond on or prior to July 20, 2018 to address Navigant's concerns and immediately cease from interfering with Navigant's workforce.

51.     On July 21, 2018, Pettersson emailed his former direct report and in-house counsel for Navigant to "return" the information he took. Without consulting Navigant, Pettersson also wrote that he unilaterally decided to destroy all records of such information, violating Pettersson's preservation obligations after he was advised of potential litigation and potentially frustrating Navigant's ability to forensically determine what Pettersson has done with the information he misappropriated from Navigant. Pettersson did not respond or address Navigant's concerns regarding his improper solicitations and hiring of the former Navigant employees who reported to him.

52.     On July 25, 2018, Milliman responded to Navigant by claiming Mori and Roth independently applied for open-posted positions at Milliman without any involvement of Pettersson. Milliman's claims stand in stark contrast to the evidence. It is simply implausible that both Mori and Roth made complete and abrupt U-turns to leave Navigant after expressing confidence and appreciation for the increased roles and opportunities they were provided without Pettersson's interference.

53.     On July 27, 2018, Navigant, through counsel, wrote both Pettersson and Milliman in a last attempt to resolve Navigant's complaints. Specifically, Navigant demanded access to all of Pettersson's electronic devices to investigate the existence of Navigant Confidential

VERIFIED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF - 13
CASE NO.

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

Information and to remediate same and to demand that Pettersson and Milliman cease raiding and interfering with Navigant's workforce. Navigant demanded that Pettersson and Milliman respond within one week, by August 3, 2018. A true and correct copy of the July 27, 2018 letter is attached hereto as Exhibit 3.

54.     After July 27, Navigant uncovered additional evidence of Pettersson's misconduct. Specifically, a forensic examination of the Navigant computer assigned to Pettersson evidences that Pettersson's representations in his July 21 letter were misleading at best, if not outright false. Among other things, the forensic examination revealed the following conduct on May 31, 2018, Pettersson's last day of employment:

- Pettersson inserted two USB storage devices into his computer, both of which have not been returned;

- Petterson deleted well over 100 Navigant documents and files that appear to relate to current employees and clients of Navigant;

55.     In addition, on May 22, 2018, Pettersson accessed a Google Drive cloud-based storage account from his Navigant computer. It is unknowable without further examination of that account what information Pettersson may have copied and stored to that account.

56.     On August 3, 2018, Milliman and Pettersson responded to Navigant's July 27 letter. Milliman responded that, despite having a week to address these issues, would need more time. Pettersson denied Navigant's claims and refused to take any further action to address Navigant's concerns. True and correct copies of Milliman's and Pettersson's responses are attached as Exhibits 4 and 5, respectively.

## **Irreparable Harm to Navigant**

57.     By misappropriating Navigant's confidential information and trade secrets and soliciting and hiring Navigant's employees, Defendants are harming Navigant's legitimate business interests, including the stability of its work force, its trade secrets and confidential information, and, ultimately, its client relationships and goodwill.

VERIFIED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF - 14
CASE NO.

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

58.     As a consulting company, Navigant's true assets are its workforce and the ability to offer its consulting services to clients and prospective clients. Defendants, instead of organically and lawfully growing their competing business, decided to unfairly compete with Navigant by misappropriating Navigant's confidential information, soliciting and hiring Navigant employees, and soliciting or intending to solicit Navigant's clients.

59.     Consequently, Defendants' conduct poses a threat to the stability of Navigant's workforce, the value of its confidential information and trade secrets, and Navigant's customer goodwill and relationships.

60.     Accordingly, Navigant is suffering irreparable harm and injunctive relief is necessary and appropriate to prevent further damage to Navigant.

## COUNT I
## Breach of Contract vs. Pettersson

61.     Navigant repeats and realleges each and every allegation contained in paragraphs 1 through 60 of the Complaint, as if fully set forth herein.

62.     On or about January 31, 2004, Pettersson entered into the Agreement with Navigant.

63.     The Agreement is a valid and enforceable contract.

64.     Under the Agreement, Pettersson promised that following the termination of his Navigant employment, he would not disclose or use any Confidential Information or Trade Secrets of Navigant.

65.     Under the Agreement, Pettersson also promised, upon termination of his employment, to immediately return all property belonging to Navigant, including its Confidential Information.

66.     Further, Pettersson agreed that for a period of twelve (12) months from the date of termination of employment, he would not, directly or indirectly, retain, solicit, induce or

VERIFIED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF - 15
CASE NO.

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

encourage any Navigant employee to terminate their employment with Navigant or join a Navigant competitor, such as Milliman.

67.     Finally, Pettersson agreed that for a period of twelve (12) months from the date of termination of employment, he would not, directly or indirectly, solicit any client of Navigant whom Pettersson had responsibility for or access to Confidential Information about to become a client of a competing business to Navigant.

68.     The post-termination covenants found in the Agreement are reasonable in scope and duration, and are necessary to protect Navigant's legitimate business interests in its workforce, Confidential Information, goodwill, and longstanding customer relationships.

69.     Navigant has performed all of the duties and obligations it owes Pettersson under the Agreement.

70.     Pettersson breached his Agreement by, directly and/or indirectly, retaining, soliciting, inducing or encouraging Navigant employees to terminate their Navigant employment and join Milliman, a direct competitor of Navigant in the government rate setting consulting industry.

71.     Pettersson further breached his Agreement by taking and retaining Navigant Confidential Information and, upon information and belief, misusing the Confidential Information to solicit Navigant employees.

72.     Upon information and belief, Pettersson breached or plans to breach his Agreement by soliciting Navigant clients whom he had responsibility for, helped develop, or had access to Confidential Information about.

73.     Navigant has incurred significant damage as a result of Pettersson's breach of the Agreement. Pettersson's illegal solicitations and actions damaged and continue to damage Navigant's employee relationships, client relationships and goodwill, trade secrets and Confidential Information, and other legitimate business interests. Navigant's damages are in excess of $75,000.00.

VERIFIED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF - 16
CASE NO.

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

74.     Moreover, Pettersson will continue to breach the Agreement. Navigant is therefore subject to continuing irreparable harm, economic injury, and damage to its goodwill and business reputation.

75.     Navigant has no adequate remedy at law and, unless injunctive relief is granted, Navigant will continue to be irreparably harmed by Pettersson's breaches of his Agreement in a manner that is not fully compensable by money damages.

76.     Navigant therefore requests that this Court grant injunctive relief against Pettersson that compels him to return all Navigant property, including all Navigant Confidential Information, enjoins Pettersson from possessing, using or disclosing Navigant Confidential Information, enjoins Pettersson from retaining, soliciting, inducing or encouraging any Navigant employee to terminate his or her employment with Navigant, and enjoins Pettersson from soliciting any Navigant client on behalf of himself or Milliman.

77.     Finally, and pursuant to Section 23 of the Agreement, Navigant is entitled to recover the attorneys' fees and costs Navigant incurs as a result of Pettersson's breaches of the Agreement.

## COUNT II
### Breach of Duty of Loyalty vs. Pettersson

78.     Navigant repeats and realleges each and every allegation contained in paragraphs 1 through 60 of the Complaint, as if fully set forth herein.

79.     As a Managing Director of Navigant and the employee responsible for the Government Rate Setting solution, Pettersson owed a duty of loyalty to Navigant, including the duty to not solicit or encourage Navigant employees to terminate their Navigant employment.

80.     Pettersson breached his duty of loyalty, while employed by Navigant, by disparaging Navigant to Navigant employees to induce them to leave Navigant, and by soliciting Navigant employees to terminate their Navigant employment.

VERIFIED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF - 17
CASE NO.

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

81.   As a result of Pettersson's breaches of his duty of loyalty, Navigant has been damaged.

## COUNT III
### Misappropriation of Trade Secrets vs. Pettersson and Milliman
### REV. CODE WASH. § 19.108.010, *et seq.*

82.   Navigant repeats and realleges each and every allegation contained in paragraphs 1 through 60 of the Complaint, as if fully set forth herein.

83.   Navigant's confidential and proprietary information includes, among other things:

> computer programs; unpatented inventions, discoveries and improvements; marketing, manufacturing, organizational, operating and business plans; strategic models; research and development; Company policies and manuals; sales forecasts; personnel information (including the identity of the Company employees, their responsibilities, competence and abilities, and compensation); medical information about employees; pricing and nonpublic financial information; current and prospective client lists and client information on clients or their employees; information concerning planned or pending acquisitions or divestitures; and information concerning purchases of major equipment or property

84.   This information constitutes trade secrets, pursuant to the Washington Uniform Trade Secret Act, REV. CODE WASH. § 19.108.010, *et seq.*, because Navigant derives independent economic value from this information not being generally known to the public and not being readily ascertainable by proper means by other persons who could obtain economic value from its disclosure or use, and because the information is the subject of reasonable efforts to maintain its secrecy.

85.   Pettersson actually misappropriated Navigant's trade secrets without its consent in violation of Washington law. Upon information and belief, Milliman is using Navigant's trade secrets disclosed by Pettersson to solicit Navigant's employees to terminate their employment and join Milliman to compete against Navigant.

86.   In addition, Pettersson and Milliman threaten to disclose and use Navigant's trade secrets relating to Navigant customers to solicit Navigant's clients and induce them to terminate their relationship with Navigant.

VERIFIED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF - 18
CASE NO.

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

87.     Defendants will be or are being unjustly enriched by the misappropriation of Navigant's trade secrets and/or confidential information, and, unless restrained, will continue to threaten to use, actually use, divulge, inevitably disclose, acquire and/or otherwise misappropriate its trade secrets and confidential information.

88.     Defendants' actual and/or threatened misappropriation has been willful and malicious.  Pettersson violated his Agreement by retaining and utilizing Navigant's secrets and confidential information after his employment terminated.

89.     As a result of the threatened and/or actual misappropriation of Navigant's trade secrets, it has been injured and faces irreparable injury. Navigant is threatened with losing employees, clients, its trade secrets and goodwill in amounts which may be impossible to determine unless Defendants are enjoined and restrained by order of this Court.

## COUNT IV
### Misappropriation of Trade Secrets vs. Pettersson and Milliman
### Defend Trade Secrets Act, 18 U.S.C. § 1836

90.     Navigant repeats and realleges each and every allegation contained in paragraphs 1 through 60 of the Complaint, as if fully set forth herein.

91.     Navigant's confidential and proprietary information includes, among other things:

computer programs; unpatented inventions, discoveries and improvements; marketing, manufacturing, organizational, operating and business plans; strategic models; research and development; Company policies and manuals; sales forecasts; personnel information (including the identity of the Company employees, their responsibilities, competence and abilities, and compensation); medical information about employees; pricing and nonpublic financial information; current and prospective client lists and client information on clients or their employees; information concerning planned or pending acquisitions or divestitures; and information concerning purchases of major equipment or property

92.     This information constitutes trade secrets, pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*., because Navigant derives independent economic value from this information not being generally known to the public and not being readily ascertainable by

VERIFIED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF - 19
CASE NO.

proper means by other persons who could obtain economic value from its disclosure or use, and because the information is the subject of reasonable efforts to maintain its secrecy.

93.     Navigant's trade secrets relate to services used in interstate and/or foreign commerce.

94.     Pettersson actually misappropriated Navigant's trade secrets without its consent in violation of federal law. Upon information and belief, Milliman is using Navigant's trade secrets disclosed by Pettersson to solicit Navigant's employees to terminate their employment and join Milliman to compete against Navigant.

95.     In addition, Pettersson and Milliman threaten to disclose and use Navigant's trade secrets relating to Navigant customers to solicit Navigant's clients and induce them to terminate their relationship with Navigant.

96.     Defendants will be or are being unjustly enriched by the misappropriation of Navigant's trade secrets and/or confidential information, and, unless restrained, will continue to threaten to use, actually use, divulge, inevitably disclose, acquire and/or otherwise misappropriate its trade secrets and confidential information.

97.     Defendants' actual and/or threatened misappropriation has been willful and malicious.  Pettersson violated his Agreement by retaining and utilizing Navigant's secrets and confidential information after his employment terminated.

98.     As a result of the threatened and/or actual misappropriation of Navigant's trade secrets, it has been injured and faces irreparable injury. Navigant is threatened with losing employees, clients, its trade secrets and goodwill in amounts which may be impossible to determine unless Defendants are enjoined and restrained by order of this Court.

## COUNT V
## Tortious Interference With Contract
### (Against Milliman)

99.     Navigant hereby repeats, realleges, and incorporates by reference the allegations which are contained in Paragraphs 1 through 77.

VERIFIED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF - 20
CASE NO.

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

100.    As set forth above, Pettersson's Agreement is a valid and enforceable contract. The post-employment activity covenants, confidentiality covenants and other provisions contained in the Agreement are reasonable in scope and duration and are reasonably necessary to protect Navigant's legitimate protectable interests in its employee relationships, client relationships and its confidential information, as well as its goodwill.

101.    Upon information and belief, Milliman was fully aware of the Agreement prior to hiring Pettersson and, in any event, was aware of the Agreement by no later than July 17, 2018 when Navigant wrote Milliman demanding the both Pettersson and Milliman cease interfering with Navigant's rights.

102.    Despite having knowledge of the Agreement, Milliman intentionally induced, permitted or incentivized Pettersson to violate the post-employment and contractual obligations owing to Navigant, without justification, in an effort to move Navigant's workforce and customers to Milliman, and/or unfairly compete with Navigant.

103.    Navigant believes Milliman's intentional interference was willful, malicious, unjustified and accomplished through wrongful means, including but not limited to, inducing, aiding or abetting Pettersson to each breach his contract with Navigant and otherwise violate the law.

104.    Milliman's interference with the Agreement is separate and apart from, and unrelated to, its threatened and/or actual misappropriation of Navigant's trade secrets.

105.    As a result of Milliman's intentional interference, Navigant has suffered irreparable and other significant injuries.

### **PRAYER FOR RELIEF**

WHEREFORE, Navigant Consulting, Inc. seeks judgment in its favor and an Order against Defendants that grants the following relief:

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

A. Temporarily, preliminarily and permanently enjoining Defendants James Pettersson and Milliman, Inc. and all parties in active concert or participation with them, from using or disclosing any of Navigant's confidential and/or proprietary information;

B. Temporarily, preliminarily and permanently enjoining Defendant James Pettersson, and all parties in active concert or participation with him, from contacting or soliciting any Navigant client or prospective client who Pettersson had responsibilities or duties with respect to, possessed Confidential Information about, or was involved in the development of such client for the purpose of selling competing services to those offered by Navigant;

C. Temporarily, preliminarily and permanently enjoining Defendant James Pettersson, and all parties in active concert or participation with him, from soliciting, inducing, or encouraging any Navigant employees to terminate or limit their relationship with Navigant;

D. Ordering Defendants James Pettersson and Milliman, Inc. and all parties in active concert or participation with them, to return to Navigant all originals and copies of all files, devices and/or documents that contain or relate to Navigant's confidential and proprietary information, including without limitation, all computers, electronic media, PDA's and electronic storage devices;

E. Ordering Defendants James Pettersson and Milliman, Inc., and all parties in active concert or participation with them, to preserve all documents, data, and electronic information and to produce for inspection and imaging all computers and other electronic storage devices and email accounts belonging to, under the control of, accessible to, or operated by James Pettersson;

F. Awarding Navigant actual, incidental, compensatory, and consequential damages to be proven at trial;

G. Awarding Navigant exemplary or punitive damages in an amount to be proven at trial due to Defendants' willful and malicious activities;

**GOLDFARB & HUCK
ROTH RIOJAS, PLLC**
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

H.      Awarding Navigant its costs and expenses incurred herein, including reasonable attorneys' fees and interest, pursuant to the Washington Uniform Trade Secret Act, REV. CODE WASH. § 19.108.010, *et seq.*;

I.      Awarding Navigant its costs and expenses incurred herein, including reasonable attorneys' fees and interest, pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836;

J.      Awarding Navigant its costs and expenses incurred herein, including reasonable attorneys' fees, as provided by Section 23 of the Agreement; and

K.      Awarding Navigant such further relief as the Court deems necessary and just.

RESPECTFULLY SUBMITTED this 7th day of August, 2018.

GOLDFARB & HUCK ROTH RIOJAS, PLLC

*/s/ Christopher M. Huck*
Christopher M. Huck, WSBA No. 34104

*/s/ R. Omar Riojas*
R. Omar Riojas, WSBA No. 35400

925 Fourth Avenue, Suite 3950
Seattle, WA 98104
Telephone:    (206) 452-0260
Facsimile:    (206) 397-3062
E-mail:       riojas@goldfarb-huck.com

SEYFARTH SHAW, LLP

*/s/ Marcus L. Mintz*
Marcus L. Mintz (*pro hac application to be filed*)

*/s/ Robyn E. Marsh*
Robyn E. Marsh (*pro hac application to be filed*)

233 S. Wacker Drive, Suite 8000
Chicago, Illinois 60606
Telephone:    (312) 460-5000
Facsimile:    (312) 460-7000
E-mail:       mmintz@seyfarth.com
              rmarsh@seyfarth.com

*Attorneys for Plaintiff Navigant Consulting, Inc.*

VERIFIED COMPLAINT FOR
INJUNCTIVE AND OTHER RELIEF - 23
CASE NO.

GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, Washington 98104
(206) 452-0260

1

**VERIFICATION**

2        Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

3 and correct.

4        Executed on this __7th___ day of August , 2018

5

6

7                  Richard F. Bajner, Jr.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

VERIFIED COMPLAINT FOR INJUNCTIVE - 24
AND OTHER RELIEF
CASE NO.

47857069v.1