UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NAVIGANT CONSULTING, INC.,<br><br>                    Plaintiff,<br>v.<br><br>MILLIMAN, INC., et al.,<br><br>                    Defendants. | CASE NO. C18-1154JLR<br><br>ORDER GRANTING MOTION FOR A TEMPORARY RESTRAINING ORDER |

## I.    INTRODUCTION

Before the court are Plaintiff Navigant Consulting, Inc.'s ("Navigant") motion for a temporary restraining order ("TRO") and motion for expedited discovery and preservation of evidence. (*See* TRO Mot. (Dkt. # 9); Disc. Mot. (Dkt. # 11).) Navigant requests that the court enter a TRO precluding Defendants Milliman, Inc. ("Milliman") and James Pettersson (collectively, "Defendants") from soliciting any Navigant employees to terminate their employment with Navigant; soliciting any clients or prospective clients of Navigant's; and using or disclosing any of Navigant's confidential

and/or trade secret information. (*See* TRO Mot. at 1.) The court has considered Navigant's motion, the attached declarations and exhibits, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court GRANTS the motion for a TRO and RESTRAINS Defendants from soliciting Navigant employees or clients and from using or disclosing Navigant's confidential information. The court further GRANTS IN PART the motion for expedited discovery that calls for preservation of evidence but RESERVES the remainder of the motion for argument at the preliminary injunction hearing.

## II. BACKGROUND

Navigant is a professional services firm that provides consulting services to clients in the healthcare, energy, and financial services industries. (Compl. (Dkt. # 1) ¶ 12.) Navigant filed this action on August 7, 2018, against former employee Mr. Pettersson and his new employer, Milliman. (*See id.*) Navigant asserts breach of contract and breach of loyalty claims against Mr. Pettersson (*id.* ¶¶ 61-81), misappropriation of trade secrets claims against Mr. Pettersson and Milliman (*id.* ¶¶ 82-98), and a tortious interference claim against Milliman (*id.* ¶¶ 99-105). Navigant seeks to enjoin Defendants from utilizing Navigant's confidential information and soliciting Navigant's clients and employees. (*Id.* ¶¶ A-C.) Moreover, Navigant seeks injunctive relief ordering Defendants to return all devices that contain Navigant's confidential information. (*Id.* ¶ D.) Finally, Navigant seeks compensatory and punitive damages. (*Id.* ¶¶ F-G.)

---

[1] Defendants have not replied to the motion, but the court finds it appropriate to issue the TRO without first considering a response from Defendants. *See infra* § III.

The dispute stems from Mr. Pettersson's employment with Navigant as a Managing Director in the firm's Government Rate Setting group. (*Id.* ¶ 24.) In that role, Mr. Pettersson oversaw a team of 15 to 20 employees who worked on client accounts generating millions of dollars in revenues annually. (*Id.* ¶ 25.) Upon being hired, Mr. Pettersson signed an agreement regarding Navigant's confidential information and non-solicitation policies ("the Agreement"). (*Id.* ¶ 27; *see also id.*, Ex. 1 ("Agreement").) The Agreement contained the following provisions on confidential information and solicitation of employees and clients:

> *Confidentiality Obligations.* During and after my employment with [Navigant], I will not (a) disclose, directly or indirectly, any Confidential Information to anyone outside of [Navigant] . . . or (b) use any Confidential Information other than as may be necessary to perform my duties at [Navigant]. . . . [I]n no event will I disclose any Confidential Information to, or use any Confidential Information for the benefit of, any current or future competitor . . . on behalf of myself, any subsequent employer, or any other person or entity.
> . . .
> <u>Non-Solicitation of Employees.</u> While employed by [Navigant] and for a period of twelve (12) months from the date of termination of my employment with [Navigant] for any reason, I shall not directly or indirectly retain any of [Navigant's] employees, nor shall I solicit, induce or encourage any of [Navigant's] employee(s) to terminate their employment with [Navigant] or to accept employment with any competitor . . . of [Navigant], nor shall I cooperate with any others in doing or attempting to do so.
> . . .
> <u>Non-Solicitation of Customers.</u> While employed by [Navigant] and for a period of twelve (12) months from the date of termination of my employment with [Navigant] for any reasons, I agree that I will not, either directly or indirectly . . . solicit any client which was a client, or a prospective client, of [Navigant] . . . within the twelve (12) months immediately preceding my termination, to become a client of a business that is competitive with the business engaged in by [Navigant].

*//*

(Compl. ¶¶ 29, 31; Agreement ¶¶ 5, 10 (italics and underlining in original).)

"Confidential Information" is defined by the Agreement as "all information that [Navigant] desires to protect and keep confidential or that [Navigant] is obligated to third parties to keep confidential, including but not limited to 'Trade Secrets' to the full extent of the definition of that term under Illinois law." (Agreement ¶ 2.)

On May 14, 2018, Mr. Pettersson notified Navigant in writing that he was resigning. (Compl. ¶ 34.) The next day, Mr. Pettersson asked Navigant to "sell him the Government Rate Setting business," suggesting that "other key employees would be leaving with [him] and the departures would significantly jeopardize the Government Rate Setting [group's] existence." (*Id.* ¶ 35.) Navigant declined and subsequently decided to promote Ben Mori, who previously reported directly to Mr. Pettersson, to lead the group. (*See id.* ¶¶ 38-39.) Although Mr. Mori initially expressed excitement about the promotion, he resigned less than a week later. (*Id.* ¶¶ 40-41.) He now allegedly works at Milliman. (*See id.* ¶ 52.) Navigant next approached Luke Roth to appoint him leader of the group. (*Id.* ¶ 43.) Like Mr. Mori, Mr. Roth initially agreed but later resigned from Navigant to join Mr. Pettersson at Milliman. (*Id.* ¶ 43; Bajner Decl. (Dkt. # 10) ¶ 41.) Mr. Pettersson, who is starting a Government Rate Setting group at Milliman, has also allegedly solicited other key Navigant employees to join Milliman. (Compl. ¶ 45; Bajner Decl. ¶¶ 39-40.)

After those events, Navigant discovered additional alleged misconduct on the part of Mr. Pettersson. Navigant examined of Mr. Pettersson's emails, which revealed that he had sent confidential information to his personal email account, including confidential

client work product, communications with clients, and information regarding current and potential employees. (Compl. ¶ 48; Bajner Decl. ¶ 42.) Further forensic examination showed that on his last day at Navigant, Mr. Pettersson inserted two USB storage devices into his computer and deleted over 100 documents and files related to Navigant employees and clients. (Compl. ¶ 54; Bajner Decl. ¶ 48.) Mr. Pettersson additionally accessed a Google Drive cloud-based storage account from his work computer after providing notice of his resignation. (Compl. ¶ 55.)

The court now considers Navigant's motions.

### III.    ANALYSIS

Federal Rule of Civil Procedure 65 empowers the court to issue a TRO. Fed. R. Civ. P. 65. A plaintiff seeking a TRO in federal court must meet the standards for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Accordingly, Navigant must establish that (1) it is likely to succeed on the merits of its claims, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).[2]

//

//

---

[2] Although the court need not reach this basis for relief here, a preliminary injunction is also "appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," provided the plaintiff also demonstrates that irreparable harm is likely and that the injunction is in the public interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

Navigant's motion and the evidence submitted therewith establishes the *Winter* requirements. First, Navigant demonstrates that it is likely to succeed on at least two of its claims—breach of contract and misappropriation of trade secrets.[3] For its breach of contract claim, Navigant must demonstrate (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resulting injury to the plaintiff. *See Kamboy v. Eli Lilly & Co.*, No. 05C4023, 2007 WL 178434, at *5 (N.D. Ill. Jan. 18, 2007).[4] Navigant proffers evidence that the restrictive covenants in the Agreement are reasonable and accordingly, that the Agreement is a valid and enforceable contract that may be enforced through injunction. *See Lifetec, Inc. v. Edwards*, 880 N.E. 2d 188, 195 (Ill. App. Ct. 2007). Not only does the Agreement protect the legitimate business interest of preserving Navigant's proprietary materials, customer relationships, and workforce, *see id.* at 196-97 (finding a legitimate business interest in confidential information and customer relationships); *Arpac Corp. v. Murray*, 589 N.E. 2d 640, 249-50 (Ill. App. Ct. 1992) (finding the maintenance of a "stable workforce" to be a legitimate business interest), but its one-year restrictions are also reasonable, *see Arpac Corp.*, 589 N.E. 2d at 250 (finding a five-year restriction reasonable). Navigant also provides evidence of Mr. Pettersson's violation of

---

[3] Because those two claims support granting a TRO—namely, restraining Defendants from utilizing Navigant's confidential information and soliciting Navigant's employees and clients—the court does not address Navigant's likelihood of success on its tortious interference claim. *See Power Balance LLC v. Power Force LLC*, No. SACV 10-1726 AG (MLGx), 2010 WL 5174957, at *2 (C.D. Cal. Dec. 14, 2010) ("A party seeking an injunction need not demonstrate likelihood of success on the merits of all claims.").

[4] The Agreement provides for the application of Illinois law. (Agreement ¶ 26.)

the Agreement, namely his solicitation of Navigant employees and the confidential client information that Mr. Pettersson took with him to Milliman.  (*See* Bajner Decl. ¶¶ 40-43, 48-49.)  Thus, the court concludes that Navigant demonstrates a likelihood of success on its breach of contract claim.

Navigant also demonstrates a likelihood of success on its misappropriation of trade secrets claim.  Navigant's Government Rate Setting client information, pricing, strategic business and marking plans, and other information qualify as trade secrets.  *See Earthbound Corp. v. MiTek USA, Inc.*, No. C16-1150RSM, 2016 WL 4418013, at *9-10 (W.D. Wash. Aug. 19, 2016) (stating that "current and prospective customers, pending projects, bids, pricing, product design, and other elements of [the plaintiff's] business" qualify as trade secrets).  Moreover, there is strong circumstantial evidence that Mr. Pettersson misappropriated the trade secrets in question, namely, his behavior in the days leading up to his resignation and his handling of both Navigant information and employees.  (*See* Bajner Decl. ¶¶ 40-43, 48-49.)

Navigant also shows that absent a TRO, it will likely suffer irreparable harm from losing clients, employees, and proprietary information.  The potential to lose customers, employees, goodwill, and revenue "certainly support[s] a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales*, 240 F.3d at 841.  Indeed, Navigant presents evidence that it has already lost two high-performing employees to Mr. Pettersson and Milliman.  (*See id.* ¶¶ 40-41.)  Moreover, "without a clear picture of what was taken and what may still be in Defendants' possession . . . [Navigant is] unable to take effective

//

steps to protect [itself]." *See Earthbound Corp.*, 2016 WL 4418013, at *10. Thus, the court concludes that Navigant has demonstrated irreparable harm absent the TRO.

Lastly, Navigant shows that the balance of equities tips in its favor and that a TRO is in the public interest. Navigant seeks to protect its proprietary business information, whereas Defendants will suffer minimal prejudice from preserving the status quo. Moreover, "[t]heft of trade secrets, and allowing the thieves to retain and use the confidential information they purloined, undermines business development and stability; preventing such conduct is in the public's interest." *Earthbound Corp.*, 2016 WL 4418013, at *10. The court therefore concludes that the balance of equities favors Navigant and that a TRO is in the public interest.

In its accompanying motion for expedited discovery, Navigant seeks the preservation of electronic devices that may contain Navigant's confidential information; documents or data that relate to this case; and any other evidence relevant to this matter. (Disc. Mot. at 6-7.) The court finds that the same analysis above applies with equal force to Navigant's request for preservation of evidence. *See supra* § III. However, the remainder of Navigant's discovery requests—which would require Defendants to turn over evidence such as emails and devices and to appear for deposition—do not address the same exigent circumstances. Thus, the court grants the motion in part and orders Defendants to preserve all evidence related to this matter. The court reserves ruling on the remainder of Navigant's motion for expedited discovery until the hearing for preliminary injunction.

//

The court may grant a TRO "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully . . . restrained." Fed. R. Civ. P. 65(c). However, a district court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). There is minimal prejudice to Defendants because the TRO simply preserves the status quo; it does not prevent Mr. Pettersson from continuing to work for Milliman. The court therefore finds that any potential costs and damages to Defendants are de minimis and declines to impose a bond.

Although Defendants have received notice of this lawsuit and motion (*see* Not. of Serv. (Dkt. # 2); Not. of Appearance (Dkt. # 13)), they have not had the opportunity to respond. *See* Local Rules W.D. Wash. LCR 65(b)(5) ("If the movant meets the requirements of Fed. R. Civ. P. 65(b), the court may grant the motion without awaiting a response."); *cf.* Fed. R. Civ. P. 65(b)(1) ("The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."). Navigant has demonstrated immediate and irreparable injury that would ensue before Defendants can be heard and have evidently gave notice to Defendants, as counsel for Mr. Pettersson has now appeared in the matter. (*See generally* Bajner Decl.; Not. of Serv.; Not. of

Appearance.) Accordingly, the court finds it appropriate to impose the TRO without first considering a response from Defendants.

The court will consider Navigant's motion and supporting documents as a motion for preliminary injunction and RENOTES that motion and the motion for expedited discovery for August 16, 2018.[5] *See* Fed. R. Civ. P. 65(b)(3) ("If the [TRO] is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest possible time . . . ."). The court orders Defendants to respond and address both the motion for a preliminary injunction and the motion for expedited discovery, no later than Monday, August 13, 2018, at 5:00 p.m. No reply shall be filed. A hearing on the motion for preliminary injunction will be held on Thursday, August 16, 2018, at 10:30 a.m. However, the parties may jointly propose a different schedule that provides a longer time for responsive briefing and a corresponding hearing date.

## IV. CONCLUSION

Based on the foregoing analysis, the court GRANTS Navigant's motion for a TRO (Dkt. # 9) and RESTRAINS Defendants from using or disclosing Navigant's confidential, proprietary, or trade information; soliciting or contacting Navigant's clients or prospective clients with whom Mr. Pettersson worked; soliciting, inducing, or encouraging any Navigant employee to terminate or limit their employment with Navigant; or failing to preserve any evidence relating to this matter. Thus, the court GRANTS in part and RESERVES RULING in part on Navigant's motion for expedited

---

[5] Pursuant to Federal Rule of Civil Procedure 65(b)(2), this TRO expires 14 days from the date of filing unless the court extends it. *See* Fed. R. Civ. P. 65(b)(2).

discovery (Dkt. # 11). Unless the court orders otherwise, the TRO expires 14 days from the date of this order. The court RENOTES Navigant's TRO motion (Dkt. # 9) as a motion for a preliminary injunction and Navigant's motion for expedited discovery for August 16, 2018. Lastly, the court SCHEDULES a preliminary injunction hearing for Thursday, August 16, 2018, at 10:30 a.m. The parties may jointly propose a schedule that provides a longer time for responsive briefing and a corresponding hearing date.

Dated this 8th day of August, 2018.

JAMES L. ROBART
United States District Judge